ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| StructSure Projects, Inc. | ) | ASBCA No. 62927 |
| | ) | |
| Under Contract No. W9127S-17-D-6004 | ) | |

APPEARANCE FOR THE APPELLANT:   Michael S. Alfred, Esq.
    Hallett & Perrin, PC
    Dallas, TX

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
    Engineer Chief Trial Attorney
    Michael T. Geiselhart, Esq.
    Engineer Trial Attorney
    U.S. Army Engineer District, Jacksonville

    Allen S. Black, Esq.
    Engineer Trial Attorney
    U.S. Army Engineer District, Little Rock

## OPINION BY ADMINISTRATIVE JUDGE EYESTER
## PURSUANT TO BOARD RULE 11

The U.S. Army Corps of Engineers (government or USACE) awarded StructSure Projects, Inc. (StructSure) a task order to perform design and alteration services at the David Grant Medical Center, Travis Air Force Base. After StructSure began work, and due to the COVID-19 pandemic, the agency designated the task order non-mission essential and precluded StructSure and its subcontractors from any on-site activities for a period of 44 days.

StructSure has filed this appeal alleging it is owed money because the government changed the task order requirements when it continued to use the temporary phasing facilities and other services provided by StructSure during the 44 days the task order was designated non-mission essential. The parties elected to waive a hearing and submit the appeal on the record pursuant to Board Rule 11. For the following reasons, we grant StructSure's appeal.

1.  On July 14, 2017, USACE awarded multiple award task order contract (MATOC) No. W9127S-17-D-6004 to StructSure[1] for design-build construction services (R4, tab 1 at 2-3).[2]  The MATOC incorporated by reference Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (MAY 2014); FAR 52.243-4, CHANGES (JUN 2007); and FAR 52.249-10, DEFAULT (FIXED-PRICED CONSTRUCTION) (APR 1984) (*id.* at 8-9).  The MATOC incorporated in full FAR 52.243-7, NOTIFICATION OF CHANGES (APR 1984) (*id.* at 26-28).  All orders issued were subject to the terms of the MATOC (*id.* at 32).

2.  Subsequently, on September 27, 2018, USACE issued order No. W9127S-18-F-0112 to StructSure in the amount of $35,106,355 (R4, tab 2 at 46). The order contained several contract line item numbers (CLINs) for various services, including design and alteration services for the David Grant Medical Center, Travis Air Force Base (*id.* at 46, 48-52).  Each CLIN set forth a fixed-price amount (*id.* at 48-52). StructSure was to complete the work by March 12, 2021 (*id.* at 56).

3.  As relevant here, CLIN 0006 required StructSure provide temporary phasing facilities for use at the medical center during the alteration services and was awarded in the fixed amount of $2,437,055 (*id.* at 50).  There were two temporary phasing facility sites--one for the Joint Radiation Oncology Center (JROC) and one for all others, including pediatrics (*see* R4, tab 13 at 158; Request for Proposal (RFP) Statement of Work, attach. 01 10 10 SOW D-Drawings (23May18).pdf at 13). StructSure's subcontractor for the temporary phasing facilities was Sustainable Modular Management (Sustainable Modular) (*see* R4, tab 13 at 158).

4.  On March 21, 2020, the government issued its first of several notices to StructSure stating that the Wing Leadership designated the task order award as non-mission essential and therefore StructSure and its subcontractors could not continue on-site construction activity until later notified (R4, tab 4).  The notice advised StructSure that the government may excuse a contractor's performance delay pursuant to FAR 52.249-10 and/or FAR 52.249-14 due to the COVID-19 public health emergency and StructSure might be entitled to non-compensable days (*id.*).  Several similar notices followed in March and April (R4, tabs 7-9).

---

[1] The MATOC was awarded to United Excel Corporation (R4, tab 1 at 3).  However, on July 1, 2019, the government issued a modification changing the contractor's name to StructSure Projects, Inc. on the MATOC and all task order awards (R4, tab 3 at 116).

[2] Citations to the Rule 4 file are to the government's Bates-stamped numbers. Citations to the briefs are to the PDF page numbers.

5. On April 29, 2020, the government informed StructSure that it could recommence on-site construction activities (R4, tab 10). The parties both acknowledge that due to COVID-19 and the task order's designation as non-mission essential, StructSure was unable to perform on site for 44 days (app. br. at 5; gov't reply br. at 4).

6. Two weeks later, StructSure submitted a request for equitable adjustment (REA) regarding the impacts of the suspension of work, mostly relating to schedule (R4, tab 11 at 135-36). Some impacts included supply chain issues, remobilization time, and revised site procedures (*id.* at 135). In response, on May 19, 2020, the agency issued bilateral Modification No. A00008, changing the task order completion date to June 19, 2021, and thereby adding 92 calendar days to the period of performance (R4, tab 12 at 152-53). The modification did not increase the order price and explained the delay was due to the COVID-19 pandemic, which required stoppage of work on the project (*id.* at 153). The modification, issued pursuant to the default clause, only accounted for the "non-compensatory time extension" as it was the government's "understanding that the contractor plan[ned] to submit an REA for costs incurred due to the Government's actions dealing with COVID-19" which would be reviewed once received for merit (*id.* at 154).

7. On July 2, 2020, StructSure submitted another REA stating that the temporary phasing facilities and associated rental furniture and equipment were in use by the government during the time the project was classified as non-mission essential and StructSure could not perform on site (R4, tab 13 at 155). As a result, StructSure stated it incurred extended rental costs for the facilities, furniture and equipment because originally, these items were to be on site for only 13 months (*id.*). However, due to the stoppage of work at the job site, and per the modification, the temporary phasing facilities were on site for 16 months (*id.*). StructSure attached an itemized sheet of cost impacts for the temporary phasing facilities, furniture rental, medical gas rental, and initial outfitting services for three months, at a total cost of $278,227 (*id.* at 157). In addition, StructSure attached documents showing the rental costs for two temporary phasing facilities (one for JROC and one for pediatrics), rental furniture, increased storage of items at the warehouse, and oxygen bottle refills (*id.* at 158-60). The agency denied the REA stating that pursuant to FAR 52.249-10, the government may grant extra time in response to a pandemic or quarantine, but not additional money (R4, tab 14).

8. StructSure next submitted an uncertified claim on September 4, 2020, seeking reimbursement for the same costs (R4, tab 15). According to the claim, because the government occupied the temporary phasing facilities and utilized the rental furniture/equipment during the stoppage of work, StructSure did not have the opportunity to demobilize the facilities from the jobsite to prevent incurring these

additional costs (*id.*). The claim was later certified by StructSure on February 3, 2021 (R4, tab 18 at 190).

9. On March 30, 2021, USACE issued a contracting officer's final decision (COFD) denying the claim for two reasons (R4, tab 19). First, the agency stated that the exclusion from the work site was not a change as it was considered a sovereign act of the government and therefore pursuant to FAR 52.249-10, the contracting officer could issue a non-compensable extension for days lost, which the agency did (*id.* at 191). Second, while the Coronavirus Aid, Relief, and Economic Security Act (CARES Act)[3] permitted compensation to a contractor to maintain its workforce, StructSure must bear the costs here--despite the fact the medical facility continued to use the temporary phasing facilities during the period StructSure was not allowed access--because it had a fixed-priced task order (*id.* at 191-92).

10. The government does not contest there is evidence (*e.g.*, the subcontractor invoices) that the temporary phasing facilities cost StructSure $278,227 in additional rental charges from March-June 2021 (gov't reply br. at 3-4). In addition, the government "does not contest that it benefitted from using the [temporary phasing facilities] during the period from March 19, 2021 to June 19, 2021" (*id.* at 4). We find StructSure provided the temporary phasing facilities and the government used them for patients during the 44-day stoppage of work.

11. On May 14, 2021, StructSure filed a notice of appeal of the COFD with the Board and later filed its complaint. In its complaint, StructSure contends the government used and occupied the temporary phasing facilities during the shutdown, and for three months beyond the contracted lease terms that ended on February 16, 2021, for the pediatric facility and March 6, 2021, for the JROC unit (compl. ¶¶ 2-3).

DECISION

StructSure argues that the temporary phasing facilities remained on site for three months longer than originally anticipated, triggering a clause in its subcontract with Sustainable Modular and obligating it to pay additional monthly rental payments (app. br. at 1). According to StructSure, COVID-19 did not stop work at the base, as evidenced by the fact government personnel continued to use StructSure's leased temporary phasing facilities (*id.*). StructSure argues that it is entitled to an adjustment for the change pursuant to FAR 52.243-7(e), NOTIFICATION OF CHANGES, and general equitable principles as the contract price did not reflect the costs associated with an extended lease period (*id.* at 2-3). In this regard, StructSure argues that FAR 52.243-7(e) requires an adjustment to the task order price when government

---

[3] The COFD is referring to Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020).

conduct effects a change causing an increase in the contractor's cost (app. br. at 3, 11; app. reply br. at 4-5).

The government argues that FAR 52.243-7, NOTIFICATION OF CHANGES, is irrelevant because as its name implies, it only addresses the process for notification and the processing of changes (gov't reply br. at 3). While StructSure argues in its legal briefs that FAR 52.243-7 governs, we conclude the crux of its argument, as set forth in the REA, claim, complaint, and briefs is that the government changed the task order requirements. As noted, the task order incorporated by reference FAR 52.243-4, CHANGES (JUN 2007), which provides that the contracting officer shall make an equitable adjustment and modify the award for any change causing an increase in the contractor's cost. FAR 52.243-4(d).

Here, the task order and CLIN 0006 were fixed-priced. The government contends that the risk of a pandemic is always borne by the contractor in a fixed-priced task order, with the exception of the grant of a non-compensable extension of time pursuant to the default clause (gov't reply br. at 3). The default clause, however, would not apply to performance of CLIN 0006 because StructSure provided the temporary phasing facilities (finding 10).

With respect to fixed-priced awards, the FAR explains that they are "not subject to any adjustment on the basis of the contractor's cost experience in performing the contract" and "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss." FAR 16.202-1. The FAR also states it provides an "incentive for the contractor to control costs and perform effectively. . . . " *Id.*

The issue in this appeal is not cost control by the contractor. And although StructSure assumed maximum risk, the government modified the task order and changed the completion date which required use of the temporary phasing facilities for a longer period of time. We therefore conclude the government changed task order CLIN 0006 to utilize the temporary phasing facilities for additional time.

The government contends, as it did in the COFD, that StructSure cannot recover for these additional costs incurred due to the sovereign acts defense (gov't reply br. at 6-9). The government argues the defense applies here because the base leadership suspended all non-mission essential activities at the base due to the COVID-19 global pandemic, not just work relating to StructSure's task order (*id.*). In this regard, the government explains StructSure is only entitled to a non-compensable delay which is why the government issued bilateral Modification No. A00008 changing the task order completion date to June 19, 2021 but not increasing the task order price (*see id.* at 1, 3, 5).

The sovereign acts defense "is an affirmative defense that is an inherent part of every government contract." *Aptim Fed. Servs., LLC*, ASBCA No. 62982, 22-1 BCA

¶ 38,127 at 185,218 (quoting *Conner Bros. Constr. Co., v. Geren*, 550 F.3d 1368, 1371 (Fed. Cir. 2008)). The sovereign acts defense is simply that the government, when sued as a contractor, cannot be held liable for its general and public acts as a sovereign. *Horowitz v. United States*, 267 U.S. 458, 461 (1925); *Conner Bros. Constr. Co.*, 550 F.3d at 1371; *Am. Gen. Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,636. The defense ensures the government, as the contracting party, is treated the same as a private contractor whose performance is rendered impossible or impracticable due to an act by the government acting as a sovereign. *Century Exploration New Orleans, LLC v. United States*, 110 Fed. Cl. 148, 176 (2013), *aff'd*, 745 F.3d 1168 (Fed. Cir. 2104). Accordingly, the defense precludes a contractor from monetary recovery for damages from the government acting akin to a private contractor resulting from the government separately acting in its sovereign capacity. *See JE Dunn Constr. Co.*, ASBCA No. 62936, 22-1 BCA ¶ 38,123 at 185,191.

The following is the test for determining whether the defense applies: (1) the government's sovereign act is public, general, and only incidentally falls upon the contract or order, and (2) the sovereign act renders performance by the government acting akin to a private contractor impossible or impracticable under the principles of contract law. *Am. Gen. Trading & Contracting*, 12-1 BCA ¶ 34,905 at 171,637 (citations omitted). Therefore, "[t]he first question is whether the government's performance of the contract has been frustrated or obstructed by a public and general act (*i.e.*, the sovereign act). *Id.* In other words, the government acting as a contractor must have breached the contract. *See Century Exploration*, 110 Fed. Cl. at 181-82 (the defense "applies only when there has been a breach of contract" and "the existence of a breach is a prerequisite to its applicability.").

Here, the parties do not dispute that the government's actions in limiting base access to only mission essential personnel due to COVID-19, and finding StructSure's task order non-mission essential and therefore precluding StructSure from on-site construction activity, was a public and general sovereign act (*see* app. reply br. at 2-3; gov't reply br. at 7-9). The government, however, also contends that "there is no dispute that the Government's actions rendered performance impossible—the contractor was excluded from accessing the base in order to perform the contract" (gov't reply br. at 7 n.4).

We agree the government prevented StructSure from entering the base to perform construction work due to a sovereign act. We also agree this caused a delay in completion of the alteration work to the building and the need for the temporary phasing facilities for a longer duration. However, supplying the temporary phasing facilities was a separate CLIN under the fixed-priced task order (finding 3) and StructSure met its deliverable (*see* finding 10). In this regard, the government did not breach the task order and preclude StructSure from delivering or delay the delivery of

6

the temporary phasing facilities. *See Century Exploration*, 745 F.3d at 1180 (because the court found the government did not breach the implied duty of good faith and fair dealing, there was no reason to reach the government's sovereign acts defense); *Anham FZCO, LLC*, ASBCA No. 59283, 17-1 BCA ¶ 36,817 at 179,442 (government failed in its motion for summary judgment to prove that a sovereign act made it impossible for the agency to cooperate with the contractor's performance).

Again, StructSure delivered the temporary phasing facilities and they were used by the government for ongoing medical treatments of patients (finding 10). This is not an instance where Structure failed to provide the temporary phasing facilities and may only be entitled to non-compensable extra time for a delay or relief from default termination. This is also not an instance where StructSure failed to provide the temporary phasing facilities and the government would still have needed them, and needed to acquire them, and therefore pay for them. Accordingly, the sovereign acts defense does not apply and StructSure is entitled to compensation.

<u>CONCLUSION</u>

For the foregoing reasons, the appeal is sustained and returned to the parties for a determination of quantum consistent with this decision.

Dated: August 7, 2023

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62927, Appeal of StructSure Projects, Inc., rendered in conformance with the Board's Charter.

Dated: August 8, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8